| | | |
|---|---|---|
| LARRY DARNELL NANCE, JR., | ) | |
| SHERRY NANCE, and SHERRY | ) | |
| NANCE, as Conservator for and | ) | |
| Best Friend of JUSTIN NANCE, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No.:   1:18-CV-11-TAV-CHS |
| | ) | |
| TRENT MARTIN KILPATRICK, | ) | |
| in his individual capacity as a | ) | |
| Chattanooga Police Officer, and | ) | |
| HANS ANDERSON, | ) | |
| in his individual capacity as a | ) | |
| Chattanooga Police Officer, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

This civil action is before the Court on plaintiffs' motion for partial summary judgment [Doc. 32] and defendants' motions for summary judgment [Docs. 45, 48]. Defendants responded in opposition to plaintiffs' motion [Docs. 39, 40], and plaintiffs replied [Doc. 41]. Plaintiffs also responded to defendants' motions [Docs. 56, 57], to which defendants replied [Docs. 61, 62]. For the reasons that follow, the Court will deny plaintiffs' partial motion for summary judgment, grant defendant Hans Anderson's motion for summary judgment, and grant in part and deny in part defendant Trent Kilpatrick's motion for summary judgment.

## I.      Background

This case arises out of an arrest that took place on March 25, 2017, in Hamilton County, Tennessee [Doc. 1].  Plaintiffs were at their home when, at approximately 10:45 p.m., three City of Chattanooga police officers, Officers Kilpatrick, Anderson, and Gunn, arrived at the premise in response to a "disorder" call.

This was the second police visit to plaintiffs' house that day.  As they arrived, Officers Gunn and Anderson advised Officer Kilpatrick that earlier in the day they had previously responded to a "shots fired" call at the same address, which was made by a neighbor who claimed that plaintiff Larry Nance was firing shots from his home [Doc. 40-1].  Officers Gunn and Anderson also advised Officer Kilpatrick that, during this prior encounter, Mr. Nance had refused their commands to take his hands out of his pockets, acted belligerently, and that the officers left the scene shortly thereafter without further contact [Docs. 39-1, 40-1].

Following this update, Officers Kilpatrick and Gunn approached plaintiff's front door by way of the front porch, while Officer Anderson positioned himself beside the porch, so that he could observe anyone potentially coming from the side of the house [*Id.*].  No porch lights were on, so the officers used flashlights to make their approach.

Plaintiffs have a screen door, which opens outward over the porch, outside of their front door, which opens inward back into the house [*Id.*].  The parties dispute the specifics of whether the screen door was opened, by whom, and at what point, during the following interaction.  However, the parties agree that plaintiff Sherry Nance opened the interior door

of the home to speak with the officers once they accessed the porch [*Id.*]. Audio heard from Officer Kilpatrick's police-car camera shows that Mrs. Nance asked the police officers if she could help them, and was quickly joined by her husband, both of whom began to question why the officers were outside their door [Doc. 47]. Although not everything that was said can be heard clearly from the car video footage, it is evident that the officers responded that they had received a "disorder" call for this location [*Id.*]. The following exchange then occurs:

> Mr. Nance: Listen, you guys got to stop this, man. If this weirdo—
> Officer Kilpatrick: Hey listen to me, you aren't going to tell me what I am and not going to do.
> Ms. Nance: We haven't done anything
> Officer Kilpatrick: And that's fine, but just give us a chance to come up here and talk to you; don't just start mouthing off.
> Mr. Nance: I'm going to tell you something right now.
> Officer Kilpatrick: Go ahead and tell me.
> Mr. Nance: This is done. This is done. This is done.
> Mr. Kilpatrick: Okay.
> Mr. Nance: This guy has been doing weird things—
> Mr. Kilpatrick: And that's fine, but you're not going to jump on me, buddy.

Each party states that the other acted aggressively during this interaction, and it is undisputed that after this encounter Officer Kilpatrick entered into the Nance home to arrest Mr. Nance [Docs. 30, 31, 46-1]. The parties disagree as to why.

Plaintiffs assert in their affidavits that Mr. Nance attempted to end the conversation with the officers by closing the front door, after which Officer Kilpatrick opened the screen door, pushed upon the front door, and entered the Nance home [Docs. 30, 31]. However, Officer Kilpatrick states that Mr. Nance "made a sudden movement just inside the doorway

that obstructed my view of his hands" [Doc. 40-1] and that, given the previous "shots fired" call and Mr. Nance's belligerent attitude (which Officer Kilpatrick attributes to intoxication and Mr. Nance denies), Officer Kilpatrick feared that Mr. Nance was attempting to grab a weapon, and so he leaned forward into the open doorway to retain his visual [Docs. 40-1, 54]. Mr. Nance maintains that he made no sudden movements to warrant Officer Kilpatrick leaning across the threshold of his home in this manner [Doc. 41-1]. When Mr. Nance slammed the door, Officer Kilpatrick alleges that he raised his leg and arm to stop the door from striking his face [*Id.*].

At this point, Officer Kilpatrick states that he was the victim of an assault, and he therefore entered plaintiffs' residence, along with Officer Gunn, to arrest Mr. Nance [Doc. 40-1]. The arrest did not go smoothly, the fault for which the parties attribute to each other. Several household items ended up disordered and on the floor. Concerned by the commotion, Defendant Anderson entered the house and saw that Mr. Nance, Officer Gunn, and Officer Kilpatrick were on the floor, with the officers on top of Mr. Nance [Doc. 39-1]. Officer Anderson states that he positioned himself between the three persons on the floor and Mrs. Nance, who at this point was screaming and on one side of the room [Doc. 39-1]. Officers Kilpatrick and Anderson then handcuffed Mr. Nance and removed him to Officer Kilpatrick's patrol car. The officers subsequently decided to transfer Mr. Nance from Officer Kilpatrick's car to Officer Anderson's car, since Officer Kilpatrick was identifying himself as the victim of an assault [Doc. 40-1].

That car transfer is also the subject of serious dispute. Officer Kilpatrick alleges that Mr. Nance lunged at him while being moved, forcing Officer Kilpatrick to block the lunge, which in turn caused Mr. Nance to lose his footing and fall [*Id.*]. Officer Anderson confirms that account [Doc. 39-1]. Mr. Nance, however, avers that he never lunged, but that Officer Kilpatrick nevertheless "body slammed" him onto the asphalt, breaking two of his ribs and causing other injuries [Doc. 1]. Once Mr. Nance was successfully deposited into Officer Anderson's police car, he was transported to the Hamilton County jail and charged with assault [Doc. 1].

Based on these events, plaintiffs accuse defendants of assault, battery, false imprisonment, intentional infliction of emotional distress, trespass to land, trespass to chattels, invasion of privacy, malicious prosecution, and various violations of the United States and Tennessee Constitutions [Doc. 1]. Plaintiffs request partial summary judgment on their claims brought under the Fourth and Fourteenth Amendments of the United States Constitution and Article 1, Section 7 of the Tennessee State Constitution [Doc. 32]. Defendants argue that they are entitled to summary judgment for all of plaintiffs' federal claims because they did not violate plaintiffs' constitutional rights. To the extent that the evidence reveals a constitutional violation, defendants state that summary judgment is appropriate under the doctrine of qualified immunity. Defendants request that all state law claims be remanded to state court, or alternatively, dismissed. This matter is now ripe for review.

## II.    Standard of Review

Summary judgment under Rule 56 of the Federal Rules of Civil Procedure is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of establishing that no genuine issues of material fact exist. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 n.2 (1986); *Moore v. Philip Morris Cos.*, 8 F.3d 335, 339 (6th Cir. 1993). All facts and inferences to be drawn therefrom must be viewed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Burchett v. Kiefer*, 301 F.3d 937, 942 (6th Cir. 2002).

Yet, "[o]nce the moving party presents evidence sufficient to support a motion under Rule 56, the nonmoving party is not entitled to a trial merely on the basis of allegations." *Curtis Through Curtis v. Universal Match Corp.*, 778 F. Supp. 1421, 1423 (E.D. Tenn. 1991) (citing *Celotex*, 477 U.S. at 317). To establish a genuine issue as to the existence of a particular element, the nonmoving party must point to evidence in the record upon which a reasonable finder of fact could find in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The genuine issue must also be material; that is, it must involve facts that might affect the outcome of the suit under the governing law. *Id.*

In a case such as this one, where parties have filed competing motions for summary judgment, each party, as movant, must establish that no genuine issue of material fact exists and that it is entitled to a judgment as a matter of law. When evaluating cross-motions for

summary judgment the Court should "evaluate each motion on its own merits and view all facts and inferences in the light more favorable to the nonmoving party." *Wiley v. United States*, 20 F.3d 222, 224 (6th Cir. 1994). If the Court finds that one party has failed meet its burden the other party is not considered to have automatically met theirs. Rather, the Court must evaluate each party's motions individually to determine if they have complied with Rule 56. "The filing of cross-motions for summary judgment does not necessarily mean that the parties consent to the resolution of the case on the existing record or that the district court is free to treat the case as if it was submitted for final resolution on a stipulated record." *Taft Broad Co. v. United States*, 929 F.2d 240, 248 (6th Cir. 1991). If the Court determines that a genuine issue of material fact exists, both motions must be denied. In the alternative, if the Court finds that no genuine issue of material fact exists and a party is entitled to prevail as a matter of law, the Court will render judgment. *Klaus v. Hilb, Rogal & Hamilton Co. of Ohio*, 437 F. Supp. 2d 706, 732 (S.D. Ohio 2006).

The Court's function at the point of summary judgment is limited to determining whether sufficient evidence has been presented to make the issue of fact a proper question for the factfinder. *Id.* at 250. The Court does not weigh the evidence or determine the truth of the matter. *Id.* at 249. Nor does the Court search the record "to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479–80 (6th Cir. 1989). Thus, "the inquiry performed is the threshold inquiry of determining

whether there is a need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250.

## III. Analysis

### A. Federal Constitutional Claims

In their motions for summary judgment, both Officers Kilpatrick and Anderson raise the defense of qualified immunity. Government officials are entitled to qualified immunity from liability for civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). The relevant inquiry is "(1) taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right, and (2) was the right clearly established to the extent that a reasonable person in the officer's position would know that the conduct complained of was unlawful." *Kennedy v. City of Cincinnati*, 595 F.3d 327, 336 (6th Cir. 2010) (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (U.S. 2001)) (internal quotation marks omitted). With respect to the second prong, courts must look at the specific facts relevant to each case, and not whether a right is clearly established "as a broad general proposition." *Saucier v. Katz*, 533 U.S. at 201. A failure to establish either prong is fatal to plaintiff's case, so a court may address them in the order it sees fit. *See Pearson*, 555 U.S. at 236.

The doctrine protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). Qualified immunity is an immunity from suit, not a defense to liability. *Pearson*, 555 U.S. at 231. Where a defendant asserts qualified immunity, the plaintiff bears the burden of demonstrating that defendant is not entitled to it. *Silberstein v. City of Dayton*, 440 F.3d 306, 311 (6th Cir. 2006). The plaintiff must produce "sufficient evidence to indicate that what the official allegedly did was objectively unreasonable in light of clearly established constitutional rights." *Andrews v. Hickman County*, 700 F.3d 845, 853 (6th Cir. 2012). Where a plaintiff fails to offer sufficient evidence as to any prong he fails to carry his burden and summary judgment is appropriate for the defendant. *Chappell v. City of Cleveland*, 585 F.3d 901, 907 (6th Cir. 2009). Courts must keep in mind that "where the legal question of qualified immunity turns upon which version of the facts one accepts, the jury, not the judge, must determine liability." *McKenna v. Edgell,* 617 F.3d 432, 437 (6th Cir. 2010).

Plaintiffs have brought several claims against Officers Anderson and Kilpatrick pursuant to the Fourth, Fifth, and Fourteenth Amendments of the United States Constitution [Doc. 1]. Specifically, they allege that defendants conducted an unconstitutional search of their property, illegally entered their home and invaded their privacy, used illegal force to effectuate an illegal arrest of plaintiff Larry Nance, and illegally attempted to force plaintiffs to speak with them.

### 1.      The Officers' Presence Outside of Plaintiffs' Home

Officers Anderson and Kilpatrick are shielded by qualified immunity from plaintiffs' invasion of privacy claims.  Plaintiffs allege that the co-defendants violated the Fourth and Fourteenth Amendments of the United States Constitution by approaching plaintiffs' front door and shining their flashlights onto their front porch [Doc. 1].  The Fourth Amendment[1] states, "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the places to be searched, and the persons or things to be seized." U.S. CONST. amend. IV.  It is presumptively unreasonable for police officers to enter into a private home without a warrant.  *Payton v. New York*, 445 U.S. 573, 586 (1980).  Fourth Amendment protections also extend to the curtilage of a house.  *U.S. v. Dunn*, 480 U.S. 294, 300 (1987).  The Fourth Amendment, however, does not serve to completely bar police officers from ever entering onto someone's property unless accompanied by a valid warrant.  Instead, the Supreme Court has stated that there is an "implicit license" by homeowners which allows persons to "approach the home by the front path, knock promptly, wait briefly to be received, and then (absent invitation to linger longer) leave." *Florida v. Jardines*, 569 U.S. 1, 8 (2013).  Therefore, "a police officer not armed with a

---

[1]      The Fourteenth Amendment renders the Fourth Amendment applicable to states.  *Mapp v. Ohio*, 367 U.S. 643, 655 (1961).

warrant may approach a home and knock, precisely because that is no more than any private citizen might do." *Id.*

In light of these standards, the evidence shows that the officers did not conduct an unconstitutional search of plaintiffs' property. Officers Kilpatrick, Gunn, and Anderson were responding to a call when they arrived at plaintiffs' house. They were allowed to approach plaintiffs' house by way of the front porch to knock on the door. *See Florida v. Jardines*, 569 U.S. at 8. The parties agree that no porch light was on when the officers arrived at the Nance home. Therefore, the officers were entitled to use flashlights to aid them in making their approach. *See United States v. Clay*, 2011 U.S. Dist. LEXIS 65657, at *14 (E.D. Tenn. Apr. 11, 2011) (police officer did not violate the Fourth Amendment when he used a flashlight to enter onto a defendant's property and access the front stoop).

This calculus does not change because plaintiff Sherry Nance opened the front door to speak with the officers before they had fully made their way onto the porch and knocked on the door [Doc. 30]. Rather, this demonstrates that defendants were in the process of approaching the home, and therefore still acting under the implicit license which allowed them to do so.

Furthermore, Officer Anderson did not violate plaintiffs' constitutional rights by remaining to the side of the porch "so that [he] could see if anyone was coming from the side of the house" [Doc. 39-1] while Officers Kilpatrick and Gunn approached plaintiff in her doorway. First, Officer Anderson was within his rights to pause on his approach to the home and remain off the porch while officers Gunn and Kilpatrick engaged with Mrs.

Nance. If he were to have remained there longer than it took for Officers Gunn and Kilpatrick to knock on the front door and briefly wait for an answer, then perhaps the implicit license he had to be there would expire. *See Jardines*, 569 U.S. at 8. However, plaintiff Sherry Nance opened the door and engaged with the officers before they could knock [Doc. 30]. His license to remain where he was, therefore, had not expired.

Second, the fact that Officer Anderson was looking to see if anyone would approach from the side of the house does not transform his conduct into an impermissible search. *See* 1 Wayne R. LaFave et al., *Search & Seizure* § 2.3(f) (5th ed., 2018 update) ("[W]hen the police come on to private property to conduct an investigation or for some other legitimate purpose and restrict their movements to places visitors could be expected to go (e.g., walkways, driveways, porches), observations made from such vantage points are not covered by the Fourth Amendment." (footnotes omitted)). The officers were responding to a "disorder" call, the second call concerning plaintiff Larry Nance that day, and were entitled to approach the residence with caution. It was permissible for Officer Anderson to stand beside plaintiffs' porch, a place he was entitled to be under plaintiffs' implicit license. Viewing the evidence in a light most favorable to plaintiffs, plaintiffs have failed to establish that either officer's approach to plaintiffs' residence violated their Fourth Amendment rights. Officers Anderson and Kilpatrick are therefore entitled to qualified immunity. Because summary judgment is appropriate for defendants, plaintiffs' motion for summary judgment as to this count will be denied.

## 2. Entry Into Home

Furthermore, neither officers' entry into plaintiffs' home violated plaintiffs' clearly established constitutional rights. Although warrantless entries are "presumptively unreasonable," officers are nevertheless allowed to enter a home without a warrant under limited, "exigent" circumstances, including: "(1) hot pursuit of a fleeing felon, (2) imminent destruction of evidence, (3) the need to prevent a suspect's escape, and (4) a risk of danger to the police or others." *United States v. Rohrig*, 98 F.3d 1506, 1515 (6th Cir. 1996) (citing *United States v. Johnson*, 22 F.3d 674, 680 (6th Cir. 1994). To determine whether a circumstance is truly "exigent" the court considers three factors: "whether the Government has demonstrated a need for immediate action," "the governmental interest being served by the officers' entry into Defendant's home," and the weight of "this governmental interest against Defendant's interest in maintaining the privacy of his home." *Rohrig*, 98 F.3d at 1518. The court in *Rohrig* noted that a defendant's reasonable expectation of privacy in his home could be diminished by his own conduct. *Id.*

First, plaintiffs have failed to meet their burden demonstrating that qualified immunity does not apply to Officer Kilpatrick's warrantless entry into their home. Specifically, plaintiffs have not shown that Officer Kilpatrick violated one of their clearly established rights in a particularized sense—a necessary component to overcoming qualified immunity. *See Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) ("We do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate."). Plaintiffs have offered no precedent to the facts

at hand to demonstrate that plaintiffs' rights were clearly established in this situation. In their response, plaintiffs cite two cases, *Payton v. New York*, 445 U.S. 573 (1980) and *Florida v. Jardines*, 569 U.S. 1 (2013), for the proposition that Officer Kilpatrick's warrantless entry onto their property and into their home violated their constitutional rights [Doc. 57]. However, the Supreme Court has repeatedly admonished lower courts to refrain from defining clearly established law at high levels of generality. *See, e.g., Ashcroft*, 563 U.S. at 742 ("The general proposition, for example, that an unreasonable search or seizure violates the Fourth Amendment is of little help in determining whether the violative nature of particular conduct is clearly established.").

Neither of the cases cited by plaintiffs assist the Court in determining whether their rights were violated based on the specific facts at issue in this case. *Payton* stands for the general proposition that police cannot engage in warrantless entries into suspects' homes to make routine felony-arrests. *Payton*, 445 U.S. at 576. However, in this case the officers were responding to a "disorder" call, and Officer Kilpatrick maintains that his warrantless entry into plaintiffs' home was justified by exigent circumstances [Doc. 46]. Therefore, *Payton*'s more general holding is not directly applicable here. *Jardines* stated that law enforcement officers who used drug-sniffing dogs on the front porch of a home without a warrant executed a "search" for the purposes of the Fourth Amendment. *Jardines*, 569 U.S. at 7. As discussed above, the officers in this case did not violate the *Jardines* ruling by approaching plaintiffs' home by way of the front porch in order to knock on the door to

speak with plaintiffs.  Neither of the cases cited by plaintiffs, therefore, offer effective rebuttals of defendants' qualified immunity defense.

Furthermore, Officer Kilpatrick cites two cases, *Cummings v. City of Akron*, 418 F.3d 676 (6th Cir. 2005) and *U.S. v. Santana*, 427 U.S. 38 (1976), to demonstrate his belief that his entry into plaintiffs' home was justified under the circumstances and legal under relevant caselaw [Doc. 46].  Officer Kilpatrick highlights the facts in these cases to demonstrate that interactions between police officers and citizens in the doorways of private homes can at times be considered interactions held in public space, during which, if probable cause arises, an officer can effectuate a warrantless arrest [*Id.*].

On one side of the spectrum is *Cummings*, whose circumstances demonstrate an interaction which took place in a private space.  In *Cummings* police officers approached the defendant's home, opened a screen door, and knocked on defendant's front door.  418 F.3d at 679.  Defendant clearly manifested an intent to keep his home private, first by attempting to talk to the officers through his window, and later by only partially opening his door at their request.  *Id.* at 685.  During the subsequent conversation, an officer intentionally stuck his foot in the door, and when the defendant refused the officers' request to enter the home and tried to shut the door, he was prevented from doing so by this officer's foot.  *Id.*  The officer maintained that defendant's act of shutting the door on his foot constituted an assault, and therefore he was justified in entering the home to arrest the defendant under the hot pursuit exception to the warrant requirement.  *Id.*  The Sixth Circuit

disagreed, pointing out that "the key to the hot pursuit exception is that a suspect may not defeat an arrest which has been set in motion in a public place by the expedient of escaping to a private place." *Id.* at 686 (citing *United States v. Santana*, 427 U.S. 38, 43 (1976)). The court found that the defendant did not commit a crime in a public space because he "never fully exposed himself to public view, given that he opened the door very slightly, and only at the request of the police." *Id.*

In contrast, in *Santana* the Supreme Court determined that a defendant who was standing in the open doorway of a house was in a public space because "[s]he was not merely visible to the public but was as exposed to public view, speech, hearing, and touch as if she had been standing completely outside her house." 427 U.S. at 42. The Court found that she had no expectation of privacy there and so the police, who had probable cause to arrest her, could do so. *Id.* When the defendant attempted to retreat into the home to avoid her impending arrest, the Court found that the officers' warrantless entry into the home was appropriate under the hot pursuit exception. *Id.* The Court noted that "[t]he fact that the pursuit here ended almost as soon as it began did not render it any the less a 'hot pursuit' sufficient to justify the warrantless entry into [defendant]'s house." *Id.* at 43. The facts in *Santana* therefore demonstrate that a plaintiff standing in a doorway deemed to be a public space cannot necessarily reacquire Fourth Amendment protection simply by retreating back into the home. Co-defendant Kilpatrick argues that the present situation is more analogous to the facts in *Santana* than *Cummings*, and plaintiffs do not present

relevant caselaw, or indeed even engage in an analysis of the two cases cited by Officer Kilpatrick, to rebut this assertion.

It is important to note that under the doctrine of qualified immunity it is not necessary for the Court to determine conclusively the constitutionality of an officer's conduct. Rather, the Court must grant immunity unless "the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right," and it is "beyond debate" that the officer's actions violated the clearly established law. *Ashcroft v. al-Kidd*, 563 U.S. at 741. The Court first finds that, given plaintiffs' proximity to their open door and their interactions with the police, the question of whether they placed themselves in the public view, and therefore in a public space, is not beyond debate.

The Court reaches this conclusion even when viewing the evidence in a light most favorable to plaintiffs. The undisputed evidence shows that, as Officers Kilpatrick and Gunn approached plaintiffs' front door, Mrs. Nance preemptively opened the door to engage in conversation with them [Doc. 30]. This is unlike the plaintiff in *Cummings*, who came to a window to speak with officers only after they knocked on his door. 418 F.3d at 679. Furthermore, the facts demonstrate that Mrs. Nance opened the door wide enough for both herself and Larry Nance to view the officers and converse with them [Doc. 31]. Again, this is in contrast to the plaintiff in *Cummings*, who only opened his door "very slightly," when asked by plaintiffs to come to the front door. 418 F.3d at 686. Whereas

the court in *Cummings* found that the plaintiff "never fully exposed himself to the public view, given that he only opened the door very slightly, and only at the request of the police," 418 F.3d at 686, here Mrs. Nance opened the door before the police could request that she do so, and opened it wide enough for the police and both Larry and Sherry Nance to clearly see and converse with each other.[2]  This is similar to the situation in *Santana*, where the plaintiff was exposed to public view and hearing.  *Santana*, 427 U.S. at 42. Given these circumstances, a reasonable officer could have believed that the plaintiffs exposed themselves to public view.

Once exposed to the public view, and if probable cause arose, plaintiffs could not necessarily reclaim their Fourth Amendment protections merely by attempting to end their interaction with the police and retreating back into their house.  *See e.g. Santana*, 427 U.S. at 43 ("A suspect may not defeat an arrest which has been set in motion in a public place."). The question next becomes whether Officer Kilpatrick violated plaintiffs' clearly established rights by entering their home, or whether this entrance was justified due to

---

[2]     Apart from the interior door, plaintiffs' home also has a screen door.  As stated, the parties dispute when the screen door was opened and by whom.  However, even if the screen door was initially closed when Sherry Nance first spoke with the officers, the facts demonstrate that the parties could still clearly see and hear each other.  Furthermore, even if the officers were the ones to eventually open the screen door, this fact is immaterial.  In *Cummings*, the home also had a screen door outside of the house door. 418 F.3d at 679.  The officers there opened the screen door in order to knock on the interior door.  *Id.*  The court did not find this action to violate plaintiff's constitutional right; instead, the violation occurred when the officer attempted to enter into the home when plaintiff had clearly manifested an intent that it should remain a private space.  *Id.* at 686.  Here, as discussed above, plaintiffs did not clearly manifest an intent to keep their home private.  Moreover, even if the officers did open the screen door in this case, the facts show that it swung outward over the porch, an area the police officers were legally allowed to be [Docs. 30, 31].

exigent circumstances. In that regard, the Court finds that a reasonable officer in Kilpatrick's situation could have concluded that exigent circumstances justified his entrance. Again, plaintiffs do not point to relevant caselaw to demonstrate that Officer Kilpatrick must have understood his actions violated plaintiffs' rights. *See City of Escondido, Cal. v. Emmons*, 139 S. Ct. 500, 504 ("We have stressed the need to identify a case where an officer acting under similar circumstances was held to have violated the Fourth Amendment . . . While there does not have to be a case directly on point, existing precedent must place the lawfulness of the particular action beyond debate.") (internal quotations and citation omitted).

And, viewing the evidence in a light most favorable to the plaintiffs, the Court does not find that it was objectively unreasonable for Officer Anderson to have initially crossed plaintiffs' threshold without a warrant due to his perception of immediate risk of danger to police or others. *Johnson*, 22 F.3d at 680. Both parties describe their interaction as very heated, and the audio footage of the encounter supports the contentious nature of the encounter [Docs. 30, 31, 46-1, 47]. It is also undisputed that police officers had twice been called to plaintiffs' residence that day, once for a "shots fired" call, and then again for a "disorder" call. It is here that the recollections diverge. Plaintiffs allege that they tried to end the interaction by closing their front door, whereupon Officer Kilpatrick opened the screen door and subsequently "[threw] his arm out" in order to stop the interior door from also closing [Docs. 30, 31]. Although Mr. Nance asserts that he did not make any threatening movements toward Officer Kilpatrick or hide his hands from Kilpatrick during

their encounter [Doc. 54], Officer Kilpatrick states that nevertheless at one point during their interaction his view of Mr. Nance's hands was obstructed, and given the previous "shots fired" call and the hostile situation then occurring, Officer Kilpatrick feared that Mr. Nance was attempting to grab a weapon [Doc. 46-1]. Officer Kilpatrick maintains that he leaned across the threshold of the Nance home in order to keep a visual on Mr. Nance's hands [*id.*].

Under the totality of the circumstances, Officer Kilpatrick's actions were not objectively unreasonable, even given plaintiffs' version of events. The parties were involved in a highly antagonistic encounter, and Officer Kilpatrick was aware that this was the second police call against plaintiffs that day, the first of which involved the alleged use of a gun. Even if Larry Nance was not reaching for a firearm, and was instead reaching for his interior door to close it and end the encounter with Officer Kilpatrick, under the circumstances Officer Kilpatrick was not objectively unreasonable to fear that Mr. Nance could be reaching for a firearm, as he believed Mr. Nance had been in possession of one earlier in the day. Therefore, based on the hostile situation and his knowledge of plaintiff, it was not objectively unreasonable for Officer Kilpatrick to fear that there was an immediate risk of danger to the police or others, which would justify his opening of the screen door and leaning across the threshold in an attempt to maintain a visual on Mr. Nance's hands. *See Bing ex rel. Bing v. City of Whitehall, Ohio*, 456 F.3d 555, 564 (holding that dangerous exigent circumstances justified a warrantless home entry where the police knew plaintiff had access to a gun, the police had previously been called to plaintiff's

residence because of shots fired, and plaintiff exhibited unstable behavior); *see also Daniel v. Cox*, 1997 WL 234615, at *3 (6th Cir. 1997) (qualified immunity appropriate for police officer who opened the screen door of a home in an attempt to identify the source of movements in a house whose residents were knowingly prone to acts of violence and possibly armed).

Although Officer Kilpatrick may have only leaned across the threshold to retain a visual on Mr. Nance's hands, we know that Mr. Nance was not reaching for a gun, but was instead grabbing the door in order to shut it. Officer Kilpatrick, lacking the ability of hindsight which we now possess, saw the door swinging toward him and put up his hands to stop the door from closing on him. He then was not objectively unreasonable to believe himself to be the victim of an assault in a public space, here the doorway of the home.[3] Once Officer Kilpatrick believed he had probable cause to arrest the defendant for his assault, Mr. Nance could not necessarily "defeat an arrest which has been set in motion in a public place . . . by the expedient escaping to a private place." *Santana*, 427 U.S. at 43. Officer Kilpatrick was then was able to fully enter plaintiffs' home under the hot pursuit exception to warrantless entries. *See Johnson*, 22 F.3d at 680.

Furthermore, plaintiffs have also failed to show that Officer Anderson's warrantless entry into plaintiffs' home violated their clearly established rights. Officer Anderson also

---

[3]     Under Tennessee law, "A person commits assault who: (1) Intentionally, knowingly or recklessly causes bodily injury to another; (2) Intentionally or knowingly causes another to reasonably fear imminent bodily injury; or (3) Intentionally or knowingly causes physical contact with another and a reasonable person would regard the contact as extremely offensive or provocative." TENN. CODE ANN. § 39-13-101 (2018).

raised the defense of qualified immunity, asserting that his entrance was justified by exigent circumstances, namely his reasonable perception of the risk of danger to his fellow police officers and others within the home. *See Rohrig*, 98 F.3d at 1515. In response, plaintiffs again cite the holdings in *Payton v. New York* and *Florida v. Jardines*. *See Payton*, 445 U.S. at 576; *Jardines*, 569 U.S. at 7. As discussed above, the facts and circumstances in those cases do not aid the Court in determining whether qualified immunity should apply in this case. Plaintiffs have therefore failed to establish that Officer Anderson violated a clearly established right. The undisputed facts show that Officer Anderson responded to a "disorder" call at a location where, earlier in the day, he had responded to a "shot fired" complaint. Then, while standing to the side of the porch, he heard a verbal altercation between Officers Gunn, Kilpatrick, and Mr. Nance, saw the other two officers enter the house, and heard a commotion from inside the house which sounded like a fight. Based on these circumstances, it was reasonable for Officer Anderson to believe there was a risk of danger to his fellow police officers and others in the home so as to justify him passing through the doorway without a warrant.

Because plaintiffs fail to demonstrate that qualified immunity should not apply to both officers, summary judgment for defendants is therefore appropriate. Because summary judgment is appropriate for both defendants, plaintiffs' motion for summary judgment as to this count will be denied.

### 3. Arrest

Both officers are also entitled to qualified immunity against plaintiff Larry Nance's false arrest charge. To bring a false arrest claim under 42 U.S.C. § 1983, a plaintiff must show that the arresting officer lacked probable cause to arrest him. *Voyticky v. Vill. Of Timberlake*, 412 F.3d 669, 677 (6th Cir. 2005) (citing *Fridley v. Horrighs*, 291 F.3d 867, 872 (6th Cir. 2002)). Probable cause exists where there are "facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing or is about to commit an offense." *Crockett v. Cumberland College*, 316 F.3d 571, 580 (6th Cir. 2003) (quoting *Michigan v. DeFillippo*, 433 U.S. 31, 37 (1979)). The reasonableness of a police officer's determination of probable cause is assessed based on an officer's knowledge at the time of an arrest. *Id.* (citing *Estate of Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999)). In situations such as this, where there are multiple police officers involved in the incident, courts must look at each defendant individually to determine if they violated the plaintiff's constitutional rights. *Newbill v. Neville*, 2018 U.S. Dist. LEXIS 166399, at *14 (S.D. Ohio Sept. 27, 2018).

In the instant case, Officer Kilpatrick ordered Mr. Nance's arrest and Officer Anderson executed it. As discussed above, it was not objectively unreasonable for Officer Kilpatrick to believe himself to be the victim of an assault by Mr. Nance, thereby providing

probable cause to order Mr. Nance's arrest.[4]  Because plaintiffs cannot therefore establish that Officer Kilpatrick violated Mr. Nance's constitutional rights, qualified immunity is appropriate.

Furthermore, Officer Anderson only partially witnessed the events leading up to the arrest and therefore, when formulating probable cause to effectuate the arrest, relied in part on Officer Kilpatrick's assertion that Mr. Nance assaulted him.  This reliance was justified based on the "collective knowledge" or "fellow officer" rule:  "This doctrine recognizes the practical reality that effective law enforcement cannot be conducted unless police officers can act on directions and information transmitted by one officer to another." *United States v. Lyons*, 687 F.3d 754, 766 (6th Cir. 2012) (citing *United States v. Hensley*, 469 U.S. 221, 229 (1985)) (internal quotation omitted).  The rule allows officers to rely in good faith on reports of other officers.  To evaluate whether qualified immunity applies in these situations, courts consider "(1) what information was clear or should have been clear to the individual officer at the time of the incident; and (2) what information that officer was reasonably entitled to rely on in deciding how to act, based on an objective reading of the information."  *Humphrey v. Mabry*, 482 F.3d 840, 848 (6th Cir. 2007).

Here the fellow officer rule establishes probable cause on the part of Officer Anderson; therefore, there was no constitutional violation.  Officer Anderson did not see all of the events culminating in Mr. Nance's arrest.  He did however, hear a commotion

---

[4]      This is accordance with Tennessee law, which provides that "an officer may, without a warrant, arrest a person for a public offense committed or a breach of the peace threatened in the officer's presence."  Tenn. Code Ann. § 40-7-103.

and then, upon entering the Nance home, see Officer Kilpatrick and Mr. Nance on the floor together [Doc. 39-1]. Based on his perceptions, his reasonable reliance on Officer Kilpatrick's claim of assault, and Officer Kilpatrick's order to arrest Mr. Nance, Officer Anderson was justified in effectuating Mr. Nance's arrest.

At the summary judgment stage it is plaintiffs' burden to show that Officers Kilpatrick and Anderson are not entitled to qualified immunity, and here plaintiffs fail to do so, either by demonstrating that Officer Kilpatrick's belief that he was assaulted was objectively unreasonable or by adducing proof that Officer Anderson's reliance on Officer Kilpatrick's information and instructions was unreasonable. Plaintiffs have failed to meet their burden and qualified immunity therefore applies. Summary judgment for defendants is appropriate. Because summary judgment is appropriate for defendants, plaintiffs' motion for summary judgment as to this count will be denied.

### 4.    Rights under *Miranda*

Both defendants are entitled to summary judgment on plaintiffs' claim that they "attempted to force [plaintiffs] to talk" to them in violation of the Fifth and Fourteenth Amendments [Doc. 1]. Plaintiffs fail to put forth any facts to support this claim. As discussed above, the officers were allowed to respond to a police call and approach plaintiffs' home. There is no evidence in the record that either officer attempted to interrogate plaintiffs in violation of their *Miranda* rights, which provide that defendants must be warned of their constitutional rights against self-incrimination. *Miranda v. Arizona*, 384 U.S. 436, 444 (1966). To the extent that plaintiffs allege a violation of their

*Miranda* rights before Mr. Nance's arrest, these rights do not apply to persons not in custody. *See id.* To the extent that Mr. Nance alleges a violation of his *Miranda* rights after his arrest, defendant does not point to any evidence in the record supporting this assertion. Because there is no factual evidence supporting this claim, summary judgment for Officers Kilpatrick and Anderson is appropriate. Plaintiffs' motion for summary judgment as to this count will be denied.

### 5. Excessive Force

The right to make an arrest "necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham v. Connor*, 490 U.S. 386, 396 (1989). However, arresting and investigating officers are prohibited by the Fourth Amendment from using excessive force. *Wells v. City of Dearborn Heights*, 538 Fed. Appx. 631, 637 (6th Cir. 2013). Courts use the "objective reasonableness" test to determine whether this prohibition has been violated, asking "whether the officers' actions were 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* (quoting *Graham v. Connor*, 490 U.S. at 386). "The test is fact specific, not mechanical, and the three most important factors for each case are: (1) the severity of the crime at issue; (2) the threat of immediate danger to the officers or bystanders; and (3) the suspect's attempts to resist arrest or flee." *Id.* The test aids the Court in balancing "the nature and quality of the intrusion on a plaintiff's Fourth Amendment interests against the countervailing governmental interests at stake." *Burgess v. Fischer*, 735 F.3d 462, 472 (6th Cir. 2013) (internal citation and

quotations omitted).  Moreover, this "reasonableness" inquiry is objective and "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396.  "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.*

Plaintiff Larry Nance appears to assert that Officer Kilpatrick twice used excessive force on him: once when effectuating his arrest within plaintiffs' home, and again when moving him from one police car to another [Doc. 1].  In their motion for summary judgment plaintiffs do not analyze their excessive force claim at all [Doc. 34], and in their reply to Officer Kilpatrick's motion for summary judgment plaintiffs cite no case law to demonstrate with particularity how Officer Kilpatrick's use of force was unreasonable or excessive [Doc. 57].  Instead, in their reply brief, plaintiffs devote less than a page to their argument that Officer Kilpatrick's use of force was excessive, stating first that, "there is nothing objectively reasonable about a law enforcement officer entering someone's home to make an arrest without consent, without a warrant, and in clear violation of a U.S. Supreme Court case proscribing such misconduct" [Doc. 57].  The case plaintiffs reference is, once again, *Payton v. New York* [*Id.*].  Plaintiffs' reliance on this case has already been addressed and the Court reiterates that "a plaintiff may not allege the violation [of a constitutional right] in terms of a general, abstract right in order to survive summary judgment." *Lee v. Ritter*, 2005 U.S. Dist. LEXIS 34988, at *27 (E.D. Tenn. Dec. 12, 2005).

*Payton's* facts are dissimilar to the facts here and its holding does not rebut Officer Kilpatrick's assertion that he made his warrantless entry based on exigent circumstances.

Plaintiffs then state, without any citation, that "Mr. Kilpatrick had *no* right to use *any* force to arrest Mr. Nance in his home without a warrant. His use of force was illegal and he did not have the protection of the law" [Doc. 57] (emphasis in original). These base legal allegations are neither supported by relevant facts nor case law. Plaintiffs have again failed to meet their burden in rebutting Officer Kilpatrick's defense of qualified immunity. *See Lee*, 2005 U.S. Dist. LEXIS 34988, at *27 ("Plaintiff [] bear[s] the burden of establishing that the constitutional right allegedly violated was sufficiently clear at the time of the alleged violation and in relation to the acts committed, 'that a reasonable official would understand that his or her conduct violated that right.'") (quoting *Wagener v. City of Covington*, 933 F.2d 390, 392 (6th Cir. 1991)).

First, the Court holds that, even viewing the evidence in a light most favorable to plaintiffs, qualified immunity applies to Officer Kilpatrick's use of force in effectuating the arrest of Mr. Nance within plaintiffs' home. Mr. Nance alleges that "Trent Kilpatrick grabbed me by the throat and pushed me into appliances and furniture" [Doc. 31]. The Court is not prepared to say that Officer Kilpatrick's actions were objectively unreasonable. In effectuating Mr. Nance's arrest, Officer Kilpatrick was responding to a rapidly-evolving situation. He had just engaged in a heated conversation with plaintiff, which ended in what Kilpatrick reasonably believed to be an assault against his person. Officer Kilpatrick was furthermore at plaintiffs' residence in the first place because he was responding to a

"disorder" call, the second call against plaintiff that day.  In deciding whether Officer Kilpatrick's actions were objectively reasonable, the Court has evaluated the *Graham* factors and notes that although assault is a misdemeanor charge, the alleged assault was made against Officer Kilpatrick immediately preceding the arrest.  Given the contentious nature of the parties' interaction, the alleged assault, and this history, Officer Kilpatrick was not objectively unreasonable in using this non-lethal force to detain Mr. Nance.  *See Graham v. Connor*, 490 U.S. 386, 396 (1989) ("Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers violates the Fourth Amendment.") (internal quotation and citation omitted).

The Court will not, however, grant summary judgment to either party on Mr. Nance's claim of excessive force as to Officer Kilpatrick based on the transfer of Mr. Nance's from one police car to the other.  When evaluating multiple incidents of alleged excessive force, courts analyze the events in "segments" and "judge each [segment] on its own terms to see if the officer was reasonable at each stage." *Dickerson v. McClellan*, 101 F.3d 1151, 1161 (6th Cir. 1996) (quoting *Plakas v. Drinksi*, 19 F.3d 1143, 1150 (7th Cir. 1994)).  Therefore, just because Officer Kilpatrick's use of force against plaintiff inside the house was reasonable, his later-alleged use of force is not shielded under a general aura of appropriacy.

It is undisputed that Mr. Nance was handcuffed and in Officer Kilpatrick's car when the officers decided to transfer Mr. Nance to Officer Anderson's car.  Officers Kilpatrick and Anderson both state that, in the midst of this transfer, they saw Mr. Nance suddenly

lunge at Officer Kilpatrick, who put his hands up to stop Mr. Nance from hitting him [Docs. 39-1, 46-1]. Both officers also state that Mr. Nance subsequently fell to the ground, and then was placed in Officer Anderson's patrol car without further incident [*Id.*]. Mr. Nance, however, recounts the incident differently. He states that he never lunged at Officer Kilpatrick, but was instead "thrown" to the ground by Officer Kilpatrick, breaking two of his ribs in the process [Doc. 54]. The video footage contains neither audio nor video of this incident.

When assessing Officer Kilpatrick's motion for summary judgment, the Court must view the facts in the light most favorable to the plaintiff. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp*, 475 U.S. 574 (1986). Here, there are factual discrepancies which are material to the Court's reasonableness inquiry and which preclude summary judgment for Officer Kilpatrick. In particular, there are questions of fact regarding whether Mr. Nance posed a threat to the officers on the scene or in any other way actively resisted his arrest. Using Mr. Nance's version of events, we must first ask if there was a constitutional violation. *Humphrey v. Mabry*, 482 F.3d 840, 847 (6th Cir. 2007). Particularly, does a constitutional violation occur when a handcuffed defendant, making no sudden movements and posing no discernable threat, is "thrown" to the ground by an arresting police officer?

The answer is yes. Looking at the *Graham* factors and the particular circumstances of this case, the crime for which Mr. Nance was arrested, assault of a police officer, although serious, is still a misdemeanor. *See* TENN. CODE ANN. § 39-13-101 (2018). Moreover, Mr. Nance's threat to the police and others was greatly reduced. As opposed to

the earlier situation inside the house, here Mr. Nance was handcuffed and surrounded by two police officers who were securely monitoring him as he was moved from one police car to the other. Taking plaintiffs' facts as true, Mr. Nance at this point was not acting violently, threatening the police verbally, or in any other way acting in a potentially dangerous manner. Further, apart from alleging that Mr. Nance lunged, the officers do not state that Mr. Nance was behaving in a dangerous manner. Finally, Mr. Nance alleges that he did not try to resist the police officers or flee. Based on the totality of these circumstances, it would be objectively unreasonable for Officer Kilpatrick to throw Mr. Nance to the ground without prompt and with enough force to break his ribs.

Moreover, Mr. Nance's right to be free from excessive force while restrained and non-hostile is clearly established. Our circuit's caselaw makes clear "the right of [persons] who pose no safety risk to the police to be free from gratuitous violence during arrest." *Baker v. City of Hamilton, Ohio*, 471 F.2d 601, 608 (6th Cir. 2006) (quoting *Shreve v. Jessamine Cnty. Fiscal Court*, 453 F.3d 681, 688 (6th Cir. 2006)). For example, in *Phelps v. Coy*, 286 F.3d 296 (6th Cir. 2002), a handcuffed plaintiff was in the custody of police officers when one officer asked the plaintiff to lift his feet. 286 F.3d at 297. When the plaintiff tried to comply, another officer interpreted the movement as the plaintiff trying to kick at the first officer. The second officer tackled the plaintiff, hit him twice in the face, and banged his head on the floor several times. The court, applying the Fourth Amendment objective reasonableness test, found that qualitive immunity did not apply to the plaintiff's excessive force claim, explaining "there was simply no governmental interest in continuing

to beat [plaintiff] after he had been neutralized, nor could a reasonable officer have thought there was." *Id.* at 301.

Similarly, in *Burgess v. Fischer*, 735 F.3d 462 (6th Cir. 2013), the court decided that qualified immunity did not apply in a situation where a handcuffed plaintiff, surrounded by four jail officials, was subjected to a takedown which resulted in several fractures to plaintiff's face and head. In *McDowell v. Rogers*, 863 F.2d 1302, 1307 (6th Cir. 1988), a plaintiff who was handcuffed and not attempting violence or escape was allegedly hit with a nightstick by a police officer. Given the circumstances, the court stated that the "need for the application of force was thus nonexistent; the alleged force could only have been applied maliciously, and the amount of force allegedly used was sufficient to break [plaintiff's] rib." *Id. See also*, *Schreiber v. Moe*, 596 F.3d 323, 332 (6th Cir. 2010) ("[S]triking a neutralized suspect who is secured by handcuffs is objectively unreasonable).

Here, taking plaintiffs' version of events, Mr. Nance was handcuffed, securely between officers, and did not pose a safety risk. Given these circumstances, the need to use force against him was nonexistent, and given this circuit's case law, the application of gratuitous force enough to break Mr. Nance ribs would be objectively unreasonable.

The Court, however, will also deny Mr. Nance's motion for summary judgment as to the unconstitutionality of Officer Kilpatrick's use of force. As discussed above, there is a material factual dispute as to whether Mr. Nance lunged at Officer Kilpatrick. When viewing plaintiff's motion, the Court analyzes all facts in a light most favorable to

defendant. Here, both officers assert in their affidavits that Mr. Nance lunged at Officer Kilpatrick [Docs. 39-1, 46-1]. Considering the factors relevant to the objective reasonableness test we note that, although the crime at issue was a misdemeanor assault, it was made against Officer Kilpatrick. Furthermore, it would be reasonable for Officer Kilpatrick, seeing the plaintiff lunge in his direction, to believe that Mr. Nance was attempting to assault him again and actively resist his arrest. Because there is a genuine issue as to this material fact, summary judgment for Mr. Nance is likewise inappropriate and will be denied.

Officer Anderson, however, is entitled to summary judgment on Mr. Nance's claim of excessive force. The record shows that Officer Anderson only touched Mr. Nance in order to put handcuffs on him, which he was entitled to do in effectuating the arrest [Doc. 48-2]. There is no evidence in the record that Mr. Nance was hurt by this act of handcuffing, or that this incident is the encounter on which he bases his use force claim. Because defendant Anderson has shown that there is no genuine dispute as to any material fact with respect to this claim, summary judgment is appropriate.

As to Mrs. Nance and Justin Nance's claims of excessive force, both officers are entitled to summary judgment, because plaintiffs have not asserted any facts to support allegations of excessive force.

## B.    State Claims

Plaintiffs additionally assert several state-law claims based on the facts in this case. The Court has supplemental jurisdiction over these claims under 28 U.S.C. § 1367(a).

Although plaintiffs' motion for summary judgment only relates to their federal and state constitutional claims [Doc. 32], defendants have moved for summary judgment on all claims [Docs. 45, 48]. The Court will thus evaluate plaintiffs' state-constitution claims based on the dueling motions and plaintiffs' common law and statutory claims based only on defendants' motions. *See Wiley*, 20 F.3d at 224.

Tennessee courts have provided that the doctrine of qualified immunity applies additionally to police officers charged in state causes of action. *See Youngblood v. Clepper*, 856 S.W.2d 405, 406 (Tenn. Ct. App. 1993) (applying "common law" immunity to state law claims brought against a state trooper); *see also Rogers v. Gooding*, 84 Fed. Appx. 473, 477 (6th Cir. 2003) (finding that the district court properly applied qualified immunity to assault and battery claims). The Court will thus evaluate each of plaintiffs' claims to determine whether qualified immunity applies and summary judgment is appropriate.

### 1.    State Constitutional Claims

Plaintiffs' state constitutional claims must be dismissed against both defendants because Tennessee does not recognize a private right of action for violations of the Tennessee Constitution. *Cline v. Rogers*, 87 F.3d 176, 180 (6th Cir. 1996) ("The plaintiff can state no claim of a state constitutional violation in this case because Tennessee does not recognize a private cause of action for violations of the Tennessee Constitution.") (citing *Lee v. Lad*, 834 S.W2d 323, 325 (Tenn. Ct. App. 1992)). Therefore, plaintiffs' motion for summary judgment brought pursuant Article 1, sections 7 and 9 of the Constitution of the State of Tennessee will be denied.

## 2. Assault and Battery

Under Tennessee law, assault and battery claims alleged against police officers turn on the use of force, and whether it was reasonable or unreasonable. When alleging both claims for the same action, "a battery includes the assault and cannot be separated from it." *Lewis v. Metropolitan General Sessions Court for Nashville*, 949 S.W.2d 696, 703 (Tenn. Ct. Crim. App. Feb. 13, 1996) (citing *State v. Chaffin*, 32 Tenn. 493, 494 (1852)). An assault is "any act tending to do corporal injury to another, accompanied with such circumstances to denote at the time an intention, coupled with the present ability, of using actual violence against the person." *Butler v. City of Englewood*, 2008 WL 4006786, at *14 (E.D. Tenn. 2008) (citing *Lewis*, 949 S.W.2d at 703). Battery is defined as "an intentional act that causes an unpermitted harmful or offensive bodily contact." *Doe v. Pizza*, 2001 Tenn. App. LEXIS 224, at *14 (Tenn. Ct. App. Apr. 5, 2001) (citing *Cary v. Arrowsmith*, 777 S.W.2d 8, 21 (Tenn. Ct. App. 1989)).

Police officers may be held liable for damages caused by their excessive use of force based on these state-law theories. *City of Mason v. Banks*, 581 S.W.3d 621, 626 (Tenn. 1979). Conversely, "[t]he use of reasonable force to effectuate an arrest defeats a battery or an assault claim." *Brown v. Christian Bros. Univ.*, 428 S.W.3d 38, 58 (Tenn. Ct. App. 2013). When effectuating an arrest, "an officer may only use the force reasonably necessary to accomplish the arrest, with due regard to other attendant circumstances, such as his own safety or that of others present." *Id.* at 625. Tennessee courts employ the same excessive-force analysis in assault and battery claims as federal courts do to analyze these

claims under § 1983. *Harris v. Metro. Gov't of Nashville*, 2007 WL 4481176, at *9 (M.D. Tenn. Dec. 18, 2007).

As explained previously, plaintiff Larry Nance has asserted adequate factual grounds for his second claim of excessive force against Officer Kilpatrick based on the circumstances surrounding his transfer between Officer Kilpatrick and Officer Anderson's police cars. Because Tennessee assault and battery claims are analyzed under the same federal § 1983 "excessive force" standard, *see Harris*, 2007 WL 4481176, at *9, plaintiff Larry Nance has set forth adequate grounds for his state-law assault and battery claims against Officer Kilpatrick. All other assault and battery claims against Officer Kilpatrick, and all assault and battery claims against Officer Anderson will be dismissed.

### 3. False Imprisonment

Under Tennessee law, false imprisonment is the unlawful detention or restraint of another without justification. Two elements must be proven by a plaintiff: (1) that he was restrained or detained against his will; and (2) the unlawfulness of this restraint or detention. *Cunningham v. Sisk*, 2003 WL 23471541, at *17 (E.D. Tenn. 2003). To be liable for false imprisonment, a defendant must act without probable cause. *Brown v. SCOA Industries, Inc.*, 741 S.W.2d 916, 920 (Tenn. Ct. App. 1987).

The Court has already determined that both Officer Kilpatrick and Officer Anderson had probable cause to arrest plaintiff Larry Nance. Officer Kilpatrick's probable cause to order the arrest was based upon his reasonable belief that Larry Nance assaulted him, and Officer Anderson had probable cause to effectuate the arrest, based on his own perceptions

and Officer Kilpatrick's order.[5]  Mr. Nance has therefore failed to establish the second element necessary for a false-imprisonment claim.  Plaintiffs Sherry Nance and Justin Nance have not asserted any facts to indicate they were falsely arrested.  Summary judgment in favor of defendants on this issue is therefore appropriate.

### 4.  Trespass to Land

Under Tennessee law, "every unauthorized, and therefore unlawful entry, into the close of another, is a trespass."  *Stout v. Carmax Auto Fin.*, 2013 U.S. Dist. Lexis 169707, at *9 (W.D. Tenn. Oct. 7, 2013).  However, police officers may enter onto private land, approach the front door of a residence, knock, and ask questions of the residents.  *See United States v. Clay*, 2011 U.S. Dist. LEXIS 65657, at *12 (E.D. Tenn. 2011) (citing *Hardesty v. Hamburg Twp.*, 461 F.3d 646, 654 (6th Cir. 2006)).  Both Officer Kilpatrick and Officer Anderson lawfully entered onto plaintiffs' land in order to approach plaintiffs' front door and engage with them.  Furthermore, as already discussed, both officers legally entered into the Nance's home based on exigent circumstances.  *See Rohrig*, 98 F.3d 1506 (6th Cir. 1996).  Because the officers' entry onto plaintiffs' land and into plaintiffs' home was lawful, summary judgment will be granted for defendants.

---

[5]     Tennessee courts utilize a doctrine similar to the federal "fellow officer" rule discussed by this Court when analyzing the lawfulness of Mr. Nance's arrest under federal law.  Tennessee has adopted the "police team" rule so that police officers may "combine their collective perceptions so that if the composite otherwise satisfies the presence requirement that requirement is deemed satisfied although the arresting officer does not himself witness all the elements of the offense." *State v. Ash*, 12 S.W.3d 800, 806 (Tenn. Crim. App. 1999).  Therefore, under Tennessee law as well as federal law, Officer Anderson was allowed to rely on Officer Kilpatrick's account of Mr. Nance's alleged assault when formulating probable cause to arrest Mr. Nance.

### 5. Trespass to Chattels

Plaintiffs allege that Officer Kilpatrick is liable for trespass to chattels because several household goods were damaged during Officer Kilpatrick's arrest of Larry Nance's [Doc. 1]. "A trespass to chattels occurs when one party intentionally uses or intermeddles with personal property in rightful possession of another without authorization." *Garner v. Coffee County Bank*, 2015 WL 6445601, at *6 (Tenn. Ct. App. Oct 23, 2015). To maintain this claim plaintiffs must be able to prove that defendants "wrongfully interfered with or injured plaintiff's property [] causing actual damage to the property or depriving the Plaintiff of its use for a substantial period. *Id.* at 7.

Plaintiffs' claim fails. First, there is no indication that Officer Kilpatrick intended to use or intermeddle with the Nance's household goods. In fact, the complaint doesn't allege that Officer Kilpatrick touched or intended to touch the household goods; it instead says that the goods were damaged by Larry Nance when he was "thrown into" them and "consequently knocked [them] over" [Doc. 1]. Based on the circumstances, it is clear that Officer Kilpatrick's intent was to subdue and arrest Mr. Nance, not intentionally intermeddle with the Nance's household goods. Furthermore, plaintiffs cannot prove that Officer Kilpatrick *wrongfully* interfered with the goods because Officer Kilpatrick was effectuating a lawful arrest and is entitled to qualified immunity for his non-lethal use of force. Summary judgment is therefore appropriate for Officer Kilpatrick.

### 6. Invasion of Privacy

Plaintiffs allege that both officers invaded their privacy by entering into plaintiffs' home without permission or a warrant [Doc. 1]. Under Tennessee law, an invasion of privacy occurs when a person "intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another." *Roberts v. Essex Microtel Associates, II. L.P.*, 46 S.W.3d 205, 210–11 (Tenn. Ct. App. 2000). Warrantless entries into private homes can be considered invasions of privacy, however, an officer's warrantless entry into a private home is not considered an invasion of privacy if that entry is based on exigent circumstances. *Basden v. Lawson*, 1992 Tenn. App. LEXIS 285, at *6 (Tenn. Ct. App. Mar. 27, 1992). Because both Officers Kilpatrick and Anderson's warrantless entries into plaintiffs' home were justified by exigent circumstances, plaintiffs' claim of invasion of privacy must fail and summary judgment is appropriate for both defendants.

### 7. Malicious Prosecution

To succeed on a claim of malicious prosecution, plaintiffs must show that an earlier civil or criminal action was (1) filed without probable cause; 2) filed with malice; and (3) terminated in favor of the plaintiffs. *Himmelfarb v. Allain*, 380 S.W.3d 35, 38 (Tenn. 2012).

> A grand jury's indictment creates a rebuttable presumption that probable cause to institute the criminal proceeding existed . . . At the summary judgment stage, evidence of a grand jury's indictment negates the element of lack of probable cause if the indictment is uncontested. To avoid this result, the nonmovant must produce evidence, at the summary judgment stage, that the indictment was procured by fraud. If the nonmovant fails to do so, then the fact that a grand jury issued an indictment equates to a finding of probable cause.

*Gordon v. Tractor Supply Co.*, No. M2015-01049-COA-R3-CV, 2016 Tenn. App. LEXIS 401, at *28–29 (Ct. App. June 8, 2016) (internal quotations and citations omitted).

Although it is unclear from the complaint, it appears that only Mr. Nance is filing a malicious-prosecution claim, as he was the only plaintiff charged with a crime in Hamilton County Sessions Court. As discussed earlier in this opinion, Officers Kilpatrick and Anderson had probable cause to arrest Mr. Nance. Furthermore, a neutral and detached magistrate at the Hamilton County Jail found probable cause to allow the case to proceed to Hamilton County Sessions Court, where Mr. Nance then waived his right to challenge probable cause at a preliminary hearing and bound his case over the Hamilton County Grand Jury. The grand jury, comprised of twelve impartial jurors, then found probable cause when they indicted Mr. Nance for assault on a police officer. An indictment is required in order for a case to proceed to a court hearing, where, in this instance, it was dismissed [Doc. 48-1].

The grand jury's indictment in the Hamilton County case creates a rebuttable presumption that probable cause existed to institute that criminal proceeding. Furthermore, Mr. Nance has not produced evidence demonstrating that this indictment was obtained through fraud. Because Mr. Nance cannot prove this element, summary judgment for both defendants is appropriate.

### 8. Intentional Infliction of Emotional Distress

To sustain an intentional-infliction-of-emotional-distress claim in Tennessee, a plaintiff must show that the complained of conduct (1) was intentional or reckless; (2) was

so outrageous as to not be tolerated by civil society; and (3) resulted in serious mental injury. *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997). Plaintiff's burden for demonstrating outrageous conduct is high; the Tennessee Supreme Court has explained that defendant's conduct must be "extreme" and "outrageous" and that, under Tennessee jurisprudence,

> It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by malice or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community.

*Id.* at 622–23.

First, summary judgment should be granted to Officer Anderson on plaintiffs' claims of intentional infliction of emotional distress. Officer Anderson's arrest of Mr. Nance, based on probable cause, was neither "extreme" nor "outrageous." As explained above, Officer Anderson's actions were legal when he entered onto the Nance's property, entered the Nance's home, participated in Mr. Nance's arrest, escorted Mr. Nance outside, and transferred Mr. Nance into his police car. None of these actions can be characterized as atrocious or utterly intolerable. Because plaintiffs' have failed to allege sufficient facts with respect to this second element, summary judgment for Officer Anderson is appropriate.

Summary judgment is also appropriate for Officer Kilpatrick on plaintiffs' intentional-infliction-of-emotional-distress claims. The third element, demonstrating a

serious or severe mental injury, also carries a high burden. A severe or serious emotional injury occurs "where a reasonable person, normally constituted, would be unable to adequately cope with the mental stress engendered by the circumstances of the case." *Rogers v. Louisville Land Co.*, 367 S.W.3d 196, 208 (Tenn. 2012) (quoting *Camper v. Minor*, 915 S.W.2d 437, 446 (Tenn. 1996)). Courts analyze plaintiffs' claims of severe mental injury based on the following non-exclusive factors:

> (1)    Evidence of physiological manifestations of emotional distress, including but not limited to nausea, vomiting, headaches, severe weight loss or gain, and the like;
> (2)    Evidence of psychological manifestations of emotional distress, including but not limited to sleeplessness, depression, anxiety, crying spells or emotional outbursts, nightmares, drug and/or alcohol abuse, and unpleasant mental reactions such as fright, horror, grief, shame, humiliation, embarrassment, anger, chagrin, disappointment, and worry;
> (3)    Evidence that the plaintiff sought medical treatment, was diagnosed with a medical or psychiatric disorder such as post-traumatic stress disorder, clinical depression, traumatically induced neurosis or psychosis, or phobia, and/or was prescribed medication;
> (4)    Evidence regarding the duration and intensity of the claimant's physiological symptoms, psychological symptoms, and medical treatment;
> (5)    Other evidence that the defendant's conduct caused the plaintiff to suffer significant impairment in his or her daily functioning; and
> (6)    In certain instances, the extreme and outrageous character of the defendant's conduct is itself important evidence of serious mental injury.

*Rogers*, 367 S.W.3d at 209–10.

Based on these factors, plaintiffs have failed to point to evidence in the record sufficient for a reasonable jury to conclude that they were unable to cope with the mental stress engendered by Officer Kilpatrick and Officer Anderson's conduct. First, Larry Nance states in his deposition that any mental injuries he struggles with relate to several things, including the death of his mother, witnessing a co-worker die in his vehicle, and

this incident [Doc. 48-1]. Furthermore, he states that he was only out of work for three or four days following this incident, and seems to attribute this missed work to his physical injuries following the event, rather than because of mental distress [Doc. 46-2]. Finally, he states that following this incident he chose not to be seen by a counselor, psychologist, or other mental-health professional [Doc. 48-1]. Looking at the nonexclusive factors in *Rogers*, the Court notes that Larry Nance has not alleged physiological symptoms related to this incident and did not appear to suffer significant impairment in his day-to-day functioning. Moreover, he has not sought counseling and he attributes his sleep troubles to several causes. Based on this analysis, the Court finds that Larry Nance has not demonstrated a serious or severe mental injury required to sustain his emotional-distress claim.

Sherry Nance has not offered any evidence regarding serious or severe emotional injuries she has suffered as a result of this incident. Her claim will therefore be dismissed.

The facts also do not establish that Justin Nance suffered serious or severe emotional hardship due to this event. Plaintiffs' complaint alleges that Justin Nance, who has severe autism and suffers intellectual challenges, observed his father's arrest and "was emotionally traumatized and suffered seizures for approximately two months" [Doc. 1]. However, Justin Nance did not visit his physician until five months following this incident [Doc. 46-4]. Moreover, the doctor's notes from that subsequent visit report that he did not detect any changes in Justin's condition and that he "does sleep well and is doing very well," "he is doing extremely well," "he had no seizures and no behavior problems were

reported," and his seizures have been "well controlled for more than two years now" [*Id.*]. Plaintiffs have not offered any proof to rebut this assessment. Because there is no evidence of any physiological or psychological manifestations of stress, and because it does not appear Justin sought medical treatment or was otherwise severely impaired based on this incident, the Court will grant summary judgment on Justin Nance's emotional distress claim to both defendants.

## IV.    Conclusion

For the reasons discussed above, the Court **GRANTS** defendant Hans Anderson's motion for summary judgment [Doc. 48], **GRANTS in part** and **DENIES in part** defendant Trent Kilpatrick's motion for summary judgment [Doc. 45], and **DENIES** plaintiffs' partial motion for summary judgment [Doc. 32].

ORDER ACCORDINGLY.

s/ Thomas A. Varlan
CHIEF UNITED STATES DISTRICT JUDGE